STATE OF CONNECTICUT          :
                             :
                             :          ss: New Haven, Connecticut
                             :
COUNTY OF NEW HAVEN           :          August 6, 2018

### AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Amy Noto, being duly sworn, depose and state as follows:

### BACKGROUND OF AFFIANT

1.     I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since July of 2002. My experience as an FBI Special Agent has included the investigation of international and domestic terrorism matters and violent crimes. Since October of 2016, I have been assigned to investigate Violent Crimes Against Children and have participated in several investigations involving child exploitation, trafficking of child pornography, and online enticement of minors. I have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer crimes, and various other criminal law procedures. I am a federal law enforcement officer who is engaged in enforcing federal criminal laws, and I am authorized by the Attorney General to request search and arrest warrants.

2.     I am currently investigating Brian Gregan ("Gregan"), a 32-year old male born in 1986, who resides in Windsor Locks, CT, for the following offenses: production of child pornography, in violation of 18 U.S.C. § 2251(a); receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2); soliciting a visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252A(a)(3)(B); coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b), and transferring obscene material to a minor, in violation of 18 U.S.C. § 1470 (collectively, the "TARGET OFFENSES").

3.     I make this affidavit in support of an application for a search warrant for information associated with the account name "Bryguy5051" (the "SUBJECT ACCOUNT") that is stored at premises controlled by Instagram, Inc.[1] (hereinafter "Instagram" or "the Provider"), an online social networking company that is owned by Facebook, Inc. and located at 1601 Willow Road, Menlo Park, California 94025, as more fully described in Attachment A.

4.     This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) and Rule 41 of the Federal Rules of Criminal Procedure to require Instagram to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

5.     The statements contained in this affidavit are based in part on information provided by other members of local, state, and federal law enforcement, my own investigation to include personal observations, documents and other investigative materials which I have reviewed, as well my training and experience as a Special Agent with the FBI.  Since this affidavit is being submitted for the limited purpose of obtaining a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the TARGET OFFENSES are located within the SUBJECT ACCOUNT, as more fully described in Attachment A.

---

[1]  Based on my training and experience and information provided to me by other law enforcement officers, I am aware that Instagram is a free social media service that can be accessed on the www.instagram.com webpage and through the Instagram application that can be downloaded on to Apple and Android devices.  Instagram allows users to share photos and videos with other users, it allows other user to comment a user's shared photos and videos, and it also allows users to send messages to other users.

## RELEVANT STATUTES

6.    18 U.S.C. § 2251(a) prohibits a person from employing, using, persuading, inducing, enticing, or coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct or transmitting a live visual depiction of such conduct if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

7.    18 U.S.C. § 2252A(a)(2) prohibits a person from knowingly receiving any child pornography, as defined in 18 U.S.C. § 2256(8), when such child pornography was either mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, or when such child pornography was produced using materials that had traveled in interstate or foreign commerce. 18 U.S.C. § 2252A(a)(3) prohibits a person from knowingly soliciting, through the mails or using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, a visual depiction of an actual minor engaging in sexually explicit conduct.

8.    18 U.S.C. § 2422(b) prohibits a person from knowingly persuading, inducing, enticing, or coercing an under 18 years of age, through the use of any means and facility or means of interstate commerce, to engage in any sexual activity for which any person can be charged with a criminal offense, including the production of child pornography. *See* 18 U.S.C. § 2427.

9.    18 U.S.C. § 1470 prohibits a person from using the mail or any facility or means of interstate or foreign commerce to knowingly transfers obscene matter to another individual who has not attained the age of 16 years

3

## DEFINITIONS

10.     The following definitions apply to this Affidavit:

a.     "Minor," as used herein, is defined by 18 U.S.C. § 2256(1) to mean any person under the age of eighteen years.

b.     "Child Pornography," as used herein, includes the definition in 18 U.S.C. § 2256(8) (any visual depiction including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means of sexually explicit conduct, where (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), and also includes any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct. 18 U.S.C. § 2256(8).

c.     "Visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.  18 U.S.C. § 2256(5).

d.     "Sexually explicit conduct" means actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person. 18 U.S.C. § 2256(2)(A).

## THE INVESTIGATION AND PROBABLE CAUSE

11.     On or about June 14, 2017, the Connecticut Department of Children and Families ("DCF") contacted the Manchester Police Department ("Manchester PD") in Manchester, Connecticut, to a report a case of suspected human trafficking or child exploitation. The report indicated that the parent ("Parent One") of a 13-year old male (the "Victim-1"), whose identity is known to me, had contacted Community Health Resources for assistance. Parent One had gone through an Apple iPad belonging to Victim-1. Parent One found conversations between Victim-1 and adult men. These conversations were through the Kik Messenger[2] social media application and included sexually explicit images of Victim-1 and the men he was messaging.

12.     On or about June 14, 2017, Manchester PD Detective Christopher Morrissey met with Parent One and Victim-1's other parent ("Parent Two") at their home. According to Detective Morrissey, Detective Morrissey has more than 10 years of police training and experience and has investigated numerous crimes which have led to the arrest and conviction of persons in the State of Connecticut.

13.     During the meeting with Victim-1's parents, they reported to Detective Morrissey that Victim-1 had posted an advertisement on the website "Craigslist.org." Parent One had a white iPad tablet (the "Victim-1's iPad") and showed Detective Morrissey the advertisement in the Safari browser application. The advertisement was listed in the "Hartford>personals>casual encounters" section under "m4m."[3]  The advertisement was posted on June 10, 2017. The advertisement was titled "Sub young looking for dom near man chester - m4m (Manchester ct)." The content of the

---

[2]  Based on my training and experience and information provided to me by other law enforcement officers, I am aware that Kik Messenger ("Kik") is a free instant messaging mobile application from the Canadian company Kik Interactive, available on iOS, Android, and Windows Phone operating systems.  Kik allows users to exchange text messages, photos, and videos with other users. Messages and files exchanged between Kik users pass through Kik's computer servers, which I have been informed are located in both Canada and the United States.

[3]  Based on my training and experience, I know that "m4m" is an abbreviation for "Male for Male" or "Men for Men."

advertisement stated the following:

> I'm a teen under 18 looking to get dominated
> Or just casual sex
> Kik is the best way to reach me.

The advertisement also listed a Kik username, which is known to me.

14.     Parent One told Detective Morrissey that the Kik messenger application was installed on Victim-1's iPad and several people she believed to be adult males had contacted Victim-1 on the application.  Parent One stated the men had sent sexually explicit photographs purported to be of themselves to Victim-1. Victim-1 had also sent sexually explicit photographs and a video file of himself to these men.  Parent One stated in the video Victim-1 penetrated his anus with the handle of a hairbrush.

15.     Parent One turned Victim-1's iPad device over to Detective Morrissey and the device was put in airplane mode.  Parent One provided written consent to search Victim-1's iPad.

16.     At the Manchester PD, Detective Morrissey conducted a preview of the content on Victim-1's iPad and found several photographs of Victim-1 in the "Recently Deleted" folder. The photographs showed Victim-1 in various stages of undress. There were photographs of Victim-1's genitals and penis in an erect state. This folder also contained the video file described by Parent One. Detective Morrissey previewed the Kik messenger application and found Victim-1 had communicated with several people via the application. None of the suspects were readily identifiable.

17.     On or about June 15, 2017, Detective Morrissey brought the Victim's iPad to the Center for Digital Investigations in Manchester to conduct an extraction of the data from Victim-1's iPad.

18.     Detective Morrissey then conducted an analysis of the data extracted from the iPad. He determined Victim-1's Kik messenger username, which is known to me, was the same username that was listed in the Craigslist advertisement discussed above. Under "chats," thirty-three (33) Kik messenger conversations were extracted. In three of the conversations, Victim-1 told the person he was messaging that he was 14 years old and he shared sexually explicit photographs of himself as attachments in the conversations.

19.     One Kik conversation was with a Kik user with the display name of "B G" and a username of "crazybear86." The conversation spanned a four-day period from June 11, 2017 to June 14, 2017.  In the conversation, crazybear86 and Victim-1 engaged in sexually explicit discussions and they discuss the possibility of meeting to engage in sexual activity.  The user crazybear86 sends Victim-1 some photographs of a white male with an exposed and erect penis. In one of the photographs, the male appears to have two tattoos on his left arm, although they are not discernable.

20.     During the conversation, the user crazybear86 asked Victim-1 specifically how old he was and Victim-1 told him he was 14 years old. The user crazybear86 requested sexually explicit photographs from Victim-1 stating "Show [you are] horny."  In response, Victim-1 sends a sexually explicit photograph of what appears to be a boy lying down with his hand holding his exposed erect penis ("Photograph-1"), and a video, 15 seconds in length, depicting a male inserting the handle of a hairbrush into his anus. User crazybear86 responds with "Get that cock hard."  In response, Victim-1 send another sexually explicit photograph of an exposed erect penis.

21.     I subsequently spoke with Detective Morrissey about this investigation.  I contacted Kik to request subscriber information associated with the username crazybear86.  On or about July

13, 2017, Kik provided me with the following subscriber information associated with username: crazybear86.

> First Name: B
> Last Name: G
> Email: brgregan@[redacted].com (confirmed)
> Username: crazybear86

22.    Kik also provided me with records indicating that the crazybear86 account was accessed on June 14, 2017 from the IP address[4] 73.143.181.81.

23.    I provided the Kik subscriber information to Detective Morrissey. Detective Morrissey determined that the IP address disclosed by Kik is owned by Comcast Communications LLC ("Comcast"). On or about September 13, 2017, Detective Morrissey applied for, obtained, and served a Connecticut Superior Court Ex-Parte Order on Comcast seeking subscriber information for the IP address. Comcast responded the same day with information indicating the subscriber was a woman, whose identity is known to me, with an address in Cromwell, CT. Detective Morrissey subsequently determined that the woman had a son named Brian Gregan. The name Brian Gregan is consistent with the subscriber information provided by Kik for username crazybear86, which indicated the user's first name was listed as "B"; the user's last name was listed as "G"; and the user's email address was listed as brgregan@[redacted].com.

24.    Detective Morrissey found a Facebook page for Gregan, which has since been removed. The Facebook page contained photographs of a white male with arm tattoos that Detective Morrissey found to be identical to the tattoos in one of the pictures that Kik user crazybear86 sent to Victim-1.

25.    On or about February 16, 2018, Detective Morrissey made contact with Gregan by telephone and explained that he wanted to speak to Gregan about an ongoing investigation. Gregan

---

[4] "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet.

stated he was willing to speak to Detective Morrissey and arrived at the Manchester PD that afternoon.

26.     During the interview, Gregan confirmed his username on Kik was "Crazybear," but he stated he no longer has the KIK application as he deleted it. Detective Morrissey explained that he wanted to talk to Gregan because he had communicated with a 13 year old on Kik after responding to an advertisement on "Craigslist." When asked if he remembered responding to the advertisement, Gregan stated he has responded to a "whole bunch" of advertisements on Craigslist, but he has never met anyone in person. Gregan claimed he did not recall the conversation. Detective Morrissey provided Gregan a printed transcript of the conversation between him and Victim-1. Gregan read the conversation and stated the conversation sounded familiar, but he had never seen the victim. Gregan stated he could have been drunk at the time of the conversation. Gregan confirmed the pictures in the messages that were sent to Victim-1 were of him Gregan denied saving the pictures from the victim.

27.     At the end of the interview, Gregan provided a signed statement that stated the following:

> I, Brian Gregan, do hereby give this statement to Det. Morrissey of my own free will, without any threats or promises made to me. Sometime last year I was looking at Craigslist ads and messaging guys. I've had many conversations with people from advertisements on Craigslist and other websites such as "fetlife". I would only communicate with people I met online through KIK messenger. Det. Morrissey showed me a printed conversation I had with a person from June of 2017. I vaguely remember having the conversation. In the conversation I exchanged dirty talk and pictures with the other person. The pictures from both of us showed us naked. I never intended to meet up with the other person and have never met anyone in real life that I have talked to on KIK. I just like to talk to other people and exchange pictures. I can barely remember the conversation and don't know why I wanted to talk to someone that young. I never intended to meet up with him. I've never saved any male pictures from KIK to my phone and I never transmitted the pictures sent to me to anyone else.

28.     Prior to signing the statement, Gregan asked Detective Morrissey if he needed a lawyer.  Detective Morrissey stated he does not make recommendations to people as to whether they need representation of an attorney. Gregan stated he was being upfront and honest, and Detective Morrissey told him that was the best tactic to take.  Gregan then swore to and signed his statement.

29.     During the interview, Gregan stated he had an Apple iPhone and an Apple iPad. He stated his phone and iPad were the only internet-connected devices he owned.  After signing his sworn statement, Gregan signed a written consent to search form allowing Detective Morrissey to examine Gregan's iPhone, and he provided the phone to Detective Morrissey before leaving.  Detective Morrissey arranged to obtain Gregan's iPad from him the following day. Gregan then left the Manchester PD.

30.     Later that day, Detective Morrissey transported the iPhone to the Center for Digital Investigations in Manchester to complete an extraction of the data on the iPhone. After the data was extracted, Detective Morrissey conducted a search of all the photographs and video files on the phone.  No photos of Victim-1 were located.

31.     The next day, on or about February 17, 2018, Detective Morrissey and Sergeant Ryan Shea of the Manchester PD went to Gregan's residence to retrieve his iPad.  Gregan provided his iPad to Detective Morrissey and signed a written consent to search form.

32.     That same day, Sergeant Shea transported the iPad to the Center for Digital Investigations in Manchester to conduct an extraction of the data on the iPad. After the data was extracted, Detective Morrissey reviewed the extracted data.  No photos of Victim-1 were located.

33.     However, in reviewing the data recovered from the iPad, Detective Morrissey found a text message conversation between Gregan and another individual who referred to Gregan as

"daddy." Gregan also referred to himself as "Daddy" and referred to the other individual as "babygirl." According to Detective Morrissey, the use of the nickname "babygirl" led him to believe the individual was a female who was younger than Gregan. In the conversation, they indicated that they spoke on the social media application "Instagram."

34.     Detective Morrissey conducted a manual search on the Instagram application on Gregan's iPhone in attempt to find potential identifying information for the individual Gregan referred to as "babygirl." Detective Morrissey determined that Gregan's Instagram account name was "Bryguy5051."

35.     Detective Morrissey located an Instagram conversation between Gregan and another Instagram user. Throughout the conversation, Gregan discusses sex and wanting to have sex with the other person. Detective Morrissey determined the other person was a 17-year-old female ("Victim-2"). The conversation included talk about graphic sex acts including bondage. On several occasions, Gregan mentions Victim-2's age in describing the sex acts he wants to perform on her. Gregan also discusses having had sexual relations with her and that the relationship has gone on for over two years. Gregan asks Victim-2 for photographs, and he sends her several photographs of himself in various stages of undress as well as photographs of his erect penis. Gregan also tells Victim-2 that he wants to see her more. The last Instagram message saved on the phone was dated December 21, 2017.

36.     Detective Morrissey conducted a keyword search on the data from Gregan's iPad for the word "teen." The results showed that Gregan performed searches for pornographic videos with the search terms: "Teen gaggers"; "Ebony Teen"; "Black teen"; "Young black teen".

37.     On or about February 22, 2018, Gregan came to the Manchester PD unannounced to speak with Detective Morrissey. Detective Morrissey then interviewed Gregan. Detective

Morrissey informed Gregan that Detective Morrissey had conducted an analysis of his devices and asked Gregan why Gregan did not previously disclose his sexual relationship with a 17-year-old female.  Gregan denied being in a sexual relationship with Victim-2 and stated it was just talk.

38.     According to Detective Morrissey, Gregan denied having sex with Victim-2 until he was confronted with the evidence that he had said in conversation with her that they had sex and he was the first person with whom she had sex.  Detective Morrissey then asked Gregan how old Victim-2 was when they had sex.  Gregan paused for a significant period of time, shook his head, raised his hands off his lap several times and put them back down.  Gregan then said "it was consensual."  Gregan admitted she was 16 years old when they had sex and stated it occurred in September of 2016.  Gregan claimed that was the only sexual contact he had with the girl and it occurred at the girl's home in New Britain.  Gregan stated the girl lives with her mother and aunt and they are unaware of the relationship.

39.     Detective Morrissey asked Gregan how he began talking to Victim-2.  Gregan stated he started talking to her on the Kik messaging application and then on Instagram after first meeting her on an online forum about BDSM on the website Fetlife.com.[5]  Gregan admitted sending her pornographic material and said "she likes it."   Gregan admitted that Victim-2 sent him nude pictures in the past, but he denied saving them anywhere.  Gregan stated the pictures were sent through Kik and Instagram.

40.     Detective Morrissey asked Gregan how many other individuals under the age of 18 he communicated with over the internet or through applications. Gregan at first stated Victim-1 and Victim-2 were the only ones. Gregan later stated he could have had conversations with as

---

[5]  Based on my training and experience and information provided to me by other law enforcement officers, I am aware that BDSM is short for bondage, domination, submission/sadism, and masochism. In addition, I am aware that Fetlife.com is website.  On its homepage, FetLife describes itself as "the Social Network for the BDSM, Fetish & Kinky Community."

many as six individuals under the age of 18. Following the interview, Gregan left the Manchester PD.

41.     In reviewing the data recovered from Gregan's iPad, Detective Morrissey located a video depicting a female masturbating ("Video-1").

42.     On or about April 6, 2018, Detective Morrissey sent a preservation request to Instagram to preserve any information related to the SUBJECT ACCOUNT for 90 days.   The request was accepted and assigned case number:1623911.   Detective Morrissey subsequently sent Instagram a request to extend the preservation request to September 6, 2018.   That request was also accepted.

43.     On or about April 10, 2018, Detective Morrissey and Detective Shawn Krom located Victim-2 at her home and interviewed her.   In the interview, Victim-2 stated she first started talking to Gregan when she was 15 years old on the website fetlife.com.[6]   They then began communicating on Skype and Kik, but she could not recall her username for either application. Victim-2 stated she told Gregan she was 15 years old at the time, and Gregan told her he was 30 years old at the time.   Victim-2 stated that when she was still 15 years old, Gregan began asking her for explicit photographs of her breasts, vagina and buttocks.   Victim-2 stated she sent Gregan photographs of herself without clothes on of her breasts, vagina and buttocks.   She stated she also sent Gregan videos that showed her masturbating.

44.     Detective Morrissey then showed Victim-2 a still photograph of a frame from Video-1. Detective Morrissey cropped the photograph to remove the graphic portions.   Victim-2 identified herself as the person in the photograph.   Victim-2 could not remember how old she was when she took the video, but she indicated it was in the summer of 2016.   She recalled that her

---

[6]  I am aware that Victim-2 was born in June 2000.   Accordingly, she turned 15 years old in June 2015.

mother had blocked the use of the camera on her phone in fall of 2016 and she stated any photographs or videos of her that she sent to Gregan would have been taken before fall of 2016.

45.     During the interview, Victim-2 indicated that in August of 2016, Gregan came to Victim-2's home in New Britain and they had sexual intercourse.  Based on my knowledge of Victim-2's date of birth, she would have been 16 years old at the time.

46.     Victim-2 indicated there was a period between the end of 2016 and beginning of 2017 where she did not have contact with Gregan.  She stated he then found a way to contact her again and they have been communicating since then.  She indicated they last talked on the phone in February 2018.  She stated that recently the main way she communicates with Gregan is through Instagram.

47.     On or about April 12, 2018, Detective Morrissey and I interviewed Victim-1 at the Manchester PD on or about April 12, 2018.  Victim-1 confirmed that Victim-1's Kik username was his username which he used to communicate with men online.  Victim-1 was shown sanitized[7] versions of Photograph-1, described above, that was sent to Kik user crazybear86.  Victim-1 confirmed that he is the individual depicted in the photographs.  Based on Victim-1's date of birth, he would have been 13 years old at the time.

48.     Based on the foregoing and my review of Photograph-1 and Video-1, I believe they depict minors engaged in sexually explicit conduct, and therefore constitute child pornography.  I believe Photograph-1 depicts Victim-1 laying on a bed holding his erect penis.  Victim-1's face is not visible in the picture, and the focus and center of the picture is Victim-1's penis.  I believe Video-1 depicts Victim-2 masturbating.

---

[7] I sanitized the photographs by covering the portion of the photograph depicting the penis. However, Victim-1 could still see the rest of his body, bed, and bedroom that was visible in the photograph.

49.     Based on the foregoing, I further believe that Gregan communicated with Victim-2 through Kik and Instagram and, according to Gregan, she sent him nude photographs of herself through Kik and Instagram. The Instagram conversations recovered from Gregan's iPhone show him asking Victim-2 for photographs, and he sends her several photographs of himself in various stages of undress as well as photographs of his erect penis. Based on Victim-2's statement that their communications have been ongoing since they resumed communications in early 2017, I believe that evidence of the TARGET OFFENSES will be located in the SUBJECT ACCOUNT.

50.     Based on my training, experience, and information provided to me by other law enforcement officers, I am aware that photographs, videos, and messages posted by an Instagram user or sent from one Instagram user to another is stored in the user's Instagram account on Instagram's servers until the user deletes such data or deletes his or her account. If the user does not delete such data or does not delete his or her account, they can remain on Instagram's servers indefinitely. Even if the user deletes such data or his or her account, the data may continue to be available on Instagram's servers for a certain period of time.

51.     Based on Detective Morrissey's preservation request to Instagram on April 6, 2018, which has been extended to September 6, 2018, I believe that any and all data that was in the SUBJECT ACCOUNT as of that date would still be in the SUBJECT ACCOUNT.

## CONCLUSION

52.    Based on the aforementioned factual information, I believe there is probable cause to believe, and I do believe, that evidence of the TARGET OFFENSES is located within the SUBJECT ACCOUNT, which constitute and contain items that constitute contraband, fruits, instrumentalities and evidence of crime, or material otherwise criminally possessed, or property that is or has been used as the means of committing the offense.

53.    In consideration of the foregoing, I respectfully request that this Court issue a warrant authorizing the search of the SUBJECT ACCOUNT, for the items more specifically identified in Attachments B. Because the warrant will be served on the Provider, who will then compile the requested records at a time convenient to it, good cause exists to permit the execution of the requested warrant at any time in the day or night.

Special Agent Amy Noto
Federal Bureau of Investigation

Subscribed and sworn to before me this 6th day of August, 2018

/s/ Sarah A. L. Merriam, USMJ

HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE

16

## ATTACHMENT A

### Property to Be Searched

This warrant applies to the records and information associated with the Instagram account with the following account name:

## Bryguy5051

(referred to herein and in Attachment B as "Subject Account") that are stored at premises owned, maintained, controlled, or operated by Instagram, Inc. (referred to herein and in Attachment B as "Instagram" or "the Provider"), a company which is owned by Facebook, Inc. and located at 1601 Willow Road, Menlo Park, California 94025.

A preservation request for the Subject Account was sent by Detective Christopher Morrissey to Instagram on or about April 6, 2018 and was assigned Instagram case number 1623911. The preservation request was subsequently extended to September 6, 2018.

A-1

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by Instagram**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A, for the period from June 2015 through April 2018:

a.     The contents of all photos, videos, comments, and messages (including attachments to messages) associated with the Subject Account, including stored or preserved copies of such items, location and EXIF[8] information associated with such items, the source and destination associated with such items, and the date and time at which such items were sent, received, or posted;

b.     A list of all of the people that the user of the Subject Account follows on Instagram and all people who are following the user of the Subject Account (*i.e.*, the user's "following" list and "followers" list), as well as any friends of the user;

c.     A list of all users that the Subject Account has "unfollowed" or blocked;

d.     All data and information that has been deleted from the Subject Account;

e.     All records or other information regarding the identification of the Subject Account and location data associated with the Subject Accounts, to include full name, physical address,

---

[8] Exchangeable Image File ("EXIF") data is metadata, embedded in a digital photograph or video, that is captured when the photograph or video is created.  It can include information such as the date and time the photograph or video was taken, the make/model of the camera, and the location where the photograph or video was taken.

telephone numbers and other identifiers, records of session times and durations, the date on which

the account was created, the length of service, the IP address used to register the account, log-in

IP addresses associated with session times and dates, account status, alternative email addresses

provided during registration, methods of connecting, log files, and means and source of payment

(including any credit or bank account number);

f.      All records or other information regarding the identification of the device used to

access the Subject Account, including cellular site and sector information, GPS data, and cellular

network identifying information (such as the IMSI, MSISDN, IMEI, MEID, or ESN);

g.      All records pertaining to communications between the Provider and any person

regarding the account, including contacts with support services and records of actions taken, and

complaints about the Subject Account.

The Provider is hereby ordered to disclose the above information to the government within

14 days of service of this warrant.

The Provider is also requested to complete a certificate of authenticity for domestic

business records that will satisfy Rule 902(11) and Rule 902(13) of the Federal Rules of Evidence.

## II.     Information to be seized by the government

All information described in Section 1 that constitutes fruits, contraband, evidence, or instrumentalities of violations of production of child pornography, in violation of 18 U.S.C. § 2251(a); receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2); soliciting a visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252A(a)(3)(B); coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b), and transferring obscene material to a minor, in violation of 18 U.S.C. § 1470 (collectively, the "Target Offenses"), from June 2015 through April 2018, including, but not limited to, the following:

1. All photographs, images, and videos, in any format, including any associated metadata or EXIF information, depicting child pornography or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

2. All photographs, images, and videos, in any format, including any associated metadata or EXIF information, of any minors who may have been contacted by Brian Gregan in connection with the Target Offenses.

3. All photographs, images, and videos, in any format, including any associated metadata or EXIF information, depicting the genitals of Brian Gregan.

4. All messages and communications pertaining to the Target Offenses.

5. All account names, actual names, physical and email addresses, and contact information of minors who may have been contacted by Brian Gregan in connection with the Target Offenses.

6. Evidence of who used, accessed, owned, or controlled the Subject Account.

7. Evidence indicating how, when, and from where the Subject Account was accessed or used.

8. Evidence indicating the Brian Gregan's state of mind as it relates to the Target Offenses.